# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COLLEN LEWANDOWSKI | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 18-1441 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| NATIONWIDE MUTUAL INSURANCE COMPANY | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

Plaintiff's Motion for Summary Judgment-Declaratory Judgment (hereinafter "Plaintiff's Mot.," Doc. 15) will be denied. Defendant's Motion for Summary Judgment (hereinafter "Def.'s Mot.," Doc. 18) will be granted.

This case involves an automobile insurance policy (the "Policy,") provided by Defendant, Nationwide Mutual Insurance Company ("Defendant"), for Plaintiff, Ms. Colleen Lewandowski ("Plaintiff"). Plaintiff allowed her boyfriend, Mr. Joseph Koch, to borrow her motor vehicle, which was covered by the Policy. Mr. Koch was involved in a motor vehicle incident, causing property damage and personal injuries. As stipulated by the parties for the purposes of these Motions, Plaintiff did not know that Mr. Koch's license was suspended when she allowed him to borrow her motor vehicle. See Plaintiff's Complaint ("Compl.," Doc. 1-1). At issue is a Policy exclusion ("Exclusion 17"), which acted as the grounds upon which Defendant denied coverage to Plaintiff based on Mr. Koch's unlicensed status while using Plaintiff's motor vehicle. See id. at 16-18. In her Complaint, Plaintiff brings forth two allegations: bad faith under 42 Pa. Stat.

and Cons. Stat. Ann. § 8371 (West) and breach of contract, both stemming from Defendant's denial of coverage under the Policy.

Plaintiff argues that she is entitled to summary judgment because Defendant's interpretation of the Policy would lead to an "absurd" result and that Defendant's decision to deny her coverage was a breach of contract, done in bad faith and lacked sufficient investigation. Plaintiff's Motion ¶¶53-55. Defendant argues that the Policy precludes the coverage that Plaintiff seeks, and that its interpretation and application of the Policy is reasonable under the law and not done in bad faith. After an analysis of the Policy and relevant exclusion, the Court finds that Plaintiff's arguments lack merit and that the Policy as drafted is not ambiguous and that Defendant acted reasonably and consistently with the language of the Policy.

**A. The Meaning of Exclusion 17 and "Insured."**

Contrary to Defendant's position, Plaintiff alleges that Exclusion 17 should not apply to her. The Court does not agree. The exclusion, as written, plainly states that coverage for auto liability excludes "*any motor vehicle* which any insured…uses without a reasonable belief of being entitled to do so," and "an insured shall not be held to have a reasonable belief of being entitled to operate a motor vehicle if that person's license has been suspended, revoked, or never issued." (emphasis added). Compl. at 40, 42, and 44. As emphasized, the auto liability coverage applies to the *motor vehicle*, regardless of who was driving, provided that the driver in question constitutes an "insured" under the policy.

Plaintiff's argument that she lacked knowledge as to the status of her boyfriend's license is unpersuasive. The policyholder's knowledge is irrelevant as a component with respect to the exclusion. Whether Plaintiff knew Mr. Koch's license was suspended has no bearing on this exclusion because she is not the "insured" under the meaning of this exclusion. What matters

2

was that Mr. Koch was an "insured" as defined by the policy, and used her motor vehicle (the one under the policy) without a reasonable belief of being entitled to do so.

Turning to Plaintiff's argument that Mr. Koch does not constitute an "insured" under the policy, the Court finds that similarly unpersuasive. Plaintiff claims that the definition of "insured" is ambiguous, but the Court disagrees. As Defendant correctly points out in its briefing, the Policy defines "insured" as "[o]ne who is described as entitled to protection under each coverage" and that the relevant liability coverage section describes "any person or organization who is liable for the use of your auto while used with your permission" as someone entitled to coverage. Compl. at 30, 40. As both parties agree that Plaintiff's boyfriend used her car with her permission, he is an "insured" under the policy.

Plaintiff's reliance on <u>State Farm Mutual Automobile Insurance Company v. Moore</u> to support her argument is misplaced. 544 A.2d 1017 (Pa. Super. 1987). As Defendant correctly points out, <u>Moore</u> focused on ambiguity in the meaning of "entitled." That is not at issue here, as the Policy clearly defines what it means for a driver to be "entitled." Further, the provision at issue in <u>Moore</u> stated that the insurance company would not "provide Liability Coverage…[f]or *any person* using a vehicle without a reasonable belief that the person is entitled to do so." <u>Id.</u> at 1018 (emphasis added). In contrast, the provision at issue in the Policy denies coverage for "any motor vehicle," the definition of which is not in dispute. Compl. at 40, 42, and 44.

Plaintiff next attempts to argue that Exclusion 17 contradicts the liability section coverage agreement ("Coverage Agreement 1") in the Policy because the liability coverage refers to an individual (i.e., "you" as the policyholder, or "any person") whereas Exclusion 17 refers to the motor vehicle. As Defendant indicates, though, this section sets forth the scope of liability coverage in its broadest form. Defendant's Memorandum of Law in Opposition to

3

Plaintiff's Motion for Summary Judgment ("Def.'s Opp."), Doc. 24. That does not mean that exclusions cannot address different circumstances or scenarios and are bound to use the same exact language in the same exact manner as the general description of the liability coverage used in Coverage Agreement 1. Neither Exclusion 17 nor the definition of "insured" in the Policy is ambiguous by the Court's reading.

The Court next turns to Plaintiff's claims that reading Exclusion 17 to exclude any motor vehicle driven by the un-entitled driver, rather than the individual un-entitled driver, would lead to an "absurd" result by "strip[ping] insurance coverage from [the policyholder], who has paid for her insurance, is in good standing and who did nothing wrong." Plaintiff's Mot. at ¶31. The Court does not agree that reading the Policy this way would be absurd. The plain language of Exclusion 17 is enough to put a policyholder on notice that allowing improper operation of her motor vehicle by another could cause the Policy to become void as to her motor vehicle. This is not absurd—this is simply the consequence outlined by the Policy.

While the Court is sympathetic to Plaintiff's situation, it is ultimately not the Court's place to weigh in on the practicality of the provision—rather, it must interpret it as written. Thus, Plaintiff's arguments that the provision would require the policyholder to "ask everyone who uses her car if they have a license", and that "[i]n 2019, most people presume one has a valid driver's license unless told otherwise, especially if they ask to use your vehicle" are misplaced Plaintiff's Mot. at ¶32. The Court does not believe that the Policy requires policyholders to be omnipotent. The Policy says what it says: coverage will be excluded for any motor vehicle operated by an insured who is not entitled to do so. What a Policyholder chooses to do with respect to that exclusion is her decision.

4

Plaintiff then claims that the "onus" should have been on Mr. Koch to inform her that he did not have a license, but has not identified any legal authority for this theory. Id. at ¶33. It is unfortunate that Mr. Koch abused Plaintiff's trust by allegedly failing to disclose that his license was suspended, but Mr. Koch's wrongdoing does not affect the operation of the Policy, including all exclusions, agreed to by Plaintiff and Defendant. Whether or not Plaintiff paid for coverage in good faith and was fully compliant as the policyholder is not relevant under the conditions outlined by Exclusion 17, which she agreed to when she signed the Policy.

**B. Awareness of Exclusions.**

Plaintiff also attempts to argue that Exclusion 17 is obfuscated, and Defendant had the burden to ensure that Plaintiff "understood this exclusion or was aware of it." Plaintiff's Mot. at ¶49. Since she did not understand the exclusion, Plaintiff avers she should not be bound by it. Id. at ¶¶48-53. That is not the law. Plaintiff's reliance on Kelmo is unavailing. Kelmo Enterprises, Inc. v. Commercial Union Insurance Company, 426 A.2d 680 (Pa. Super. 1981). As Defendant notes, the reasoning in Kelmo was criticized by the Supreme Court of Pennsylvania in Standard Venetian Blind v. American Empire Insurance. 469 A.2d 563, 567 (Pa. 1983) (holding that where "the policy limitation relied upon by the insurer to deny coverage is clearly worded and conspicuously displayed, the insured may not avoid the consequences of that limitation by proof that [s]he failed to read the limitation or that [s]he did not understand it").[1] See also First Liberty Ins. Corp. v. Budow, 2007 WL 20719883, at *14 (E.D. Pa. July 17, 2007) (holding that where an exclusionary policy was "conspicuously included in the policy at the time of purchase,

---

[1] While Standard Venetian left room to consider cases where "in light of the manifest inequality of bargaining power between an insurance company and a purchaser of insurance, a court may on occasion be justified in deviating from the plain language of a contract of insurance," the Court finds that Plaintiff has failed to establish such a record to demonstrate that the provision was "unconscionable at the time it was made." Id.

5

and was worded in clear and unambiguous language" that the insurance company "did not have an affirmative duty to specifically make [policyholders] aware of the exclusion or explain the effect thereof").

While the contract is voluminous, the Court disagrees with Plaintiff's assessment that the exclusion is "buried" and not conspicuous. The Court notes that the exclusions follow directly after Coverage Section 1, and clearly apply to that section. Thus, the Court finds that the relevant exclusion was clearly labeled and not ambiguous. As a result, the Court finds that Defendant did not act in bad faith in denying coverage to Plaintiff without "investigating" whether Plaintiff understood the exclusion or had knowledge as to Mr. Koch's license status, as such an investigation was irrelevant to the plain meaning of the Policy and relevant exclusion. Defendant was reasonable in denying coverage to Plaintiff on the basis of the plain meaning of the Policy and relevant exclusions and definitions, and Plaintiff has not set forth sufficient evidence that Defendant's denial was "frivolous, unfounded, reckless, or motivated by ill will." Collins v. Allstate Ins. Co., 2010 WL 2510376, at *7 (E.D. Pa. June 17, 2010).

Plaintiff has failed to establish that Defendant breached its contract to Plaintiff and that Defendant acted in bad faith in denying coverage. The Court agrees with Defendant that Plaintiff's arguments are premised on her piecemeal reading of the Policy, which is not how insurance policies or contracts are construed. See, e.g. Cigna Corp. v. Executive Risk Indem., Inc., 111 A.3d 204, 212 (Pa. Super. 2015) (noting that a court "must view the policy in its entirety, giving effect to all of its provisions" and that "the words of the insurance policy must be construed in their natural, plain, and ordinary sense…[and] an insurance policy, like every other written contract, must be read in its entirety and the intent of the policy is gathered from consideration of the entire instrument") (internal citations and quotations omitted). Plaintiff's

attempts to read ambiguity into sections where none exist is cannot demonstrate bad faith or breach of contract as a matter of law.

## **II. ORDER**

Consistent with the foregoing, Plaintiff's Motion for Summary Judgment (**Doc. 15**) is **DENIED**; and Defendant's Motion for Summary Judgment (**Doc. 18**) is **GRANTED**. IT IS SO ORDERED.

December 20, 2019
               s\Cathy Bissoon
               Cathy Bissoon
               United States District Judge

cc (via ECF email notification):

All Counsel of Record